KILPATRICK TOWNSEND & STOCKTON LLP
KENDRA C. CHAPMAN (State Bar No. 294030)
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone:   415 576 0200
Facsimile:    415 576 0300

KILPATRICK TOWNSEND & STOCKTON LLP
ROB ROY SMITH (WA Bar No. 33798)
BREE R. BLACK HORSE (WA Bar No. 47803)
(*Pro Hac Vice Application to be filed*)
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Telephone:      206) 467-9600
Facsimile:      206) 623-6793

Attorneys for Plaintiff
BUENA VISTA RANCHERIA OF ME-WUK INDIANS

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| BUENA VISTA RANCHERIA OF ME-WUK INDIANS, a federally recognized Indian tribe,<br><br>       Plaintiff,<br><br>      v.<br><br>PACIFIC COAST BUILDING PRODUCTS, INC., a California corporation, PCBP PROPERTIES, INC., a Nevada corporation, and H.C. MUDDOX, a corporate subsidiary of Pacific Coast Building Products, Inc.,<br><br>       Defendants. | No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Comes now the Buena Vista Rancheria of Me-Wuk Indians ("Tribe"), and shows as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1362 because the Tribe is a federally-recognized Indian tribe, and this action arises under the laws of the United States.

2.      The Court has personal jurisdiction over each of the Defendants because each of them resides and/or conducts business in the State of California and the facts, actions, and occurrences giving rise to this litigation take place within the Eastern District of California.

3.      Venue is proper in this District because the Defendants are situated in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.  28 U.S.C. § 1391(e).

## NATURE OF THE ACTION

4.      The Tribe brings this action under federal common law to protect its property rights on its federal Indian trust lands from degradation caused by a new 40.1-acre surface mining operation planned by Defendants for property adjacent to the Tribe's Rancheria and the Tribe's Casino.  Put simply, Defendants' proposed surface clay mining operation is incompatible with the uses of adjacent federal Indian lands by the Tribe and the significant cultural resources located thereon.

5.      Defendants' proposed new surface clay mining operation will directly infringe on the Tribe's right to exclusively possess and use the Tribe's Rancheria.

6.      Defendants' proposed new surface clay mining operation threatens injuries and health risks to the Tribe and its members, Tribal member residents of the Tribe's Rancheria, and guests of the Tribe's Rancheria.

7.      The Tribe seeks to permanently enjoin Defendants' proposed surface clay mining activity to prevent the immediate harm that will be caused to the Tribe's federal Indian land, cultural resources, and economic development from the new adjacent 40.1-acre surface mining operation.

**PARTIES**

8.      Plaintiff, Buena Vista Rancheria of Me-Wuk Indians, is a federally-recognized sovereign Indian tribe operating under the Tribe's Constitution.  The Tribe is included on the Department of the Interior's list of recognized Indian tribes and has been included on every version of this list since approximately 1985.

9.      The Tribe's Rancheria property is a 67.5-acre parcel located in Amador County just outside the town of Buena Vista.  The United States holds the Rancheria property in trust for the benefit of the Tribe.

10.      Defendant Pacific Coast Building Products, Inc., ("PCBP") is a corporation operating in California.

11.      Defendant PCBP Properties, Inc., is a corporate subsidiary of Defendant PCBP operating in Nevada.  Defendant owns land adjacent to the east of Tribe's Rancheria upon which Defendant intends to conduct a surface clay mining operation.

12.      Defendant H.C. Muddox is a corporate subsidiary of Defendant PCBP operating in California.  H.C. Muddox supplies clay products.  On information and belief, H.C. Muddox would be the operator of the new surface clay mining operation on the PCBP land located adjacent to the Tribe's Rancheria.

**FACTS**

**A.      BRIEF HISTORY OF THE BUENA VISTA RANCHERIA OF ME-WUK INDIANS**

13.      The Tribe has occupied the Amador County region and the lands upon which the Tribe's 67.5-acre Rancheria property currently sits since time immemorial.  Despite generations of abuse, neglect, the Mission period, the Gold Rush, and destructive federal policies toward Indian tribes, including the termination era of the 1950s—all of which stripped away land ownership—the Tribe survived.  In the early twentieth century, the United States created a network of small land parcels called "Rancherias" for landless Indian tribes in California.  The United States purchased the lands constituting the Buena Vista Rancheria in 1927 with money appropriated by the Acts of June 21, 1906 (34 Stat. 325-328), and April 30, 1908 (35 Stat. 70-76).  The United States' purchase was intended to establish the Rancheria as a reservation for the

Tribe to be held in trust for the benefit of the Tribe and its members in perpetuity.  *See Cty. of Amador, Cal. v. U.S. Dep't of the Interior*, 136 F.Supp.3d 1193, 1201 (E.D. Cal. 2015), *aff'd sub nom. Cnty. of Amador v. U.S. Dep't of the Interior*, 872 F.3d 1012 (9th Cir. 2017) (citing AR900; ECF No. 65 at 16).

14.     As an outgrowth of the 1950s federal "termination" era, during which the government disestablished the legal status of many Indian tribes across the country, Congress enacted the 1958 "California Rancheria Act," Pub. L. 85-671 at 72 Stat. 619, amended in 1964 by 78 Stat. 390 ("Termination Act").  The Termination Act disestablished many California Indian Rancherias, including the Buena Vista Rancheria, and terminated the legal status of the related Indian tribes and their members as Indians under federal law.  The United States distributed Buena Vista Rancheria lands (a single 67.5-acre parcel) to the Tribe's members, then withdrew the trust status of the Buena Vista Rancheria and dissolved the Rancheria boundaries. The Termination Act required the United States to improve or construct roads serving the terminated Rancheria lands, to upgrade the related irrigation, sanitation, and domestic water systems, and to provide certain educational and other benefits and services to the terminated Tribe and its members.  The federal government failed to fulfill its commitments to the terminated California tribes, and litigation ensued against the United States and various California Counties to restore the affected tribes to their pre-termination status.  *Tillie Hardwick v. United States, et al.*, Case No.: 5:79-CV-01710 (N.D. Cal.).

15.     The plaintiff Indians and restored tribes and Rancherias, on the one hand, and the Federal and county defendants (including, with respect to the Tribe, Amador County), on the other hand, settled the case by stipulated judgment.  The settlement generally took the form, first, of a stipulation to restore the terminated tribes and Indians and, second and later, a stipulated judgment to restore the boundaries of the terminated reservations.

16.     In the case of the Tribe, a 1983 stipulated judgment restored the individual Indian plaintiffs to their status as Indians under federal law, restored the recognized status of the Tribe, and required the United States to add the restored Tribe to the Bureau of Indian Affairs' ("BIA") Federal Register list of recognized Indian tribes.

17.   A 1987 second stipulated judgment provided that the Rancheria was "never and [is] not now lawfully terminated," restored the Rancheria's original boundaries, and further declared that all land within the restored Rancheria boundaries is "Indian country"—the legal term of art for lands subject to tribal jurisdiction, as defined by 18 U.S.C. § 1151.

18.   The 1987 stipulated judgment further required the United States and Amador County to treat the Rancheria "as any other federally recognized Indian Reservation," and provided that "all of the laws of the United States that pertain to federally recognized Indian Tribes and Indians" shall apply to the Rancheria.

19.   The Tribe's struggles were far from over, however.  The 1983 stipulation contained, among other things, language that required the United States to accept the restored Buena Vista Rancheria lands back into trust so that the restored Tribe and tribal members could enjoy the full benefits of their restoration. This "mandatory trust" language was intended to spare the Tribe from navigating the BIA's highly uncertain and often protracted discretionary fee-to-trust process set out in 25 CFR 151. In 1996, the Tribe asked BIA to return to trust status the single parcel of land making up the restored Rancheria.  The BIA denied the request and erroneously advised Buena Vista that the request was required to undergo the part 151 process—as if the *Tillie Hardwick* litigation and the 1983 stipulation had no impact on the matter.

20.   In 2010, the Tribe again asked the BIA to acquire title to the restored Rancheria in trust under the express mandatory trust provisions of the 1983 stipulation.  Rather than grant or deny the request, the BIA and various offices within the Department of Interior ("DOI") endlessly bounced the Tribe's request back and forth for ten years of interminable bureaucratic confusion and delay.

21.   In 2018, the BIA denied the Tribe's mandatory trust request in a decision that it purported (inaccurately) could not be appealed, and invited the Tribe to file an entirely new application, presumably under the discretionary part 151 regulations.  Finally, the Tribe moved the *Tillie Hardwick* court in July 2020 for enforcement of the 1983 stipulation. The court granted the Tribe's motion in November 2020, and the BIA placed the Rancheria lands back into trust in March 2021.

22.     Now, less than two year later, Defendants seek to take actions that threaten the Tribe's full use and enjoyment of its restored federal trust lands.

**B.     THE TRIBE'S RANCHERIA PROPERTY**

23.     The Rancheria serves as the Tribe's cultural epicenter, source for economic development, and natural resource management.  The Rancheria is geographically characterized by gently sloping oak woodlands at higher elevation and a valley grassland and wetland area below.  Representing only a small piece of the Tribe's ancestral homelands, the Rancheria is home to the Tribe's Harrah's Northern California ("Casino"), drinking and waste water treatment plants, a cultural center, two homes, a Tribal office, the Tribal cemetery, and traditional gathering places, as well as a federally-recognized wetland preserve.  The Defendants' new clay mining operation will have immediate detrimental and devastating impacts on the Tribe's cultural, natural, and economic resources.

**1.     The Tribe's Natural And Cultural Resources On The Rancheria Property**

24.     The Rancheria is home to invaluable cultural, archeological, and natural resources that the Tribe maintains, monitors, and uses.  The Tribe's cultural center, cemetery, traditional gathering places, and the Tribe's cultivation base for growing traditional vegetation are all located on the Rancheria near the border of the Defendants' new clay mining operation, as depicted by the red circle on the map below:



Initial Cultural Resources Sensitive Area

25.     The Tribe hosts frequent cultural events for Tribal members on the Rancheria near the border of the Defendants' new clay mining operation, including separate sweat lodges for men and women which are used weekly, and traditional cultural dances that take place in the spring and fall.

26.     The Tribal cemetery is located on the Rancheria, near the border of the Defendants' new clay mining operation.  The Tribe believes that burials of Tribal ancestors including both human remains and items of cultural patrimony extend to the property border shared with Defendants, and likely extend under the surface of Defendants' property.

27.     The Tribe has an office located on the Rancheria.

28.     Residences used by Tribal members are located on the Rancheria.

29.     The Tribe maintains several groundwater monitoring and production wells located on the Rancheria directly adjacent to the location of the Defendants' new clay mining operation. The Tribe receives Environmental Protection Agency Clean Water Act Funding to implement its Spring and Surface Water Monitoring Program, and the wetlands located on the eastern portion of the Rancheria are permitted by the U.S. Army Corps of Engineers.

30.     An aquifer that is vital to both the Tribe and Amador County community is located below the land upon which the Rancheria property and the location of the Defendants' new clay mining operation are situated.  In certain areas, the water table is located only twenty to forty feet below the surface.

31.     Directly adjacent to the location of the Defendants' new clay mining operation on the Rancheria property is the Tribe's federally-recognized wetlands preserve, which the Tribe has worked tirelessly to protect and steward.  The Tribe's wetlands preserve serves as a significant cultural and natural resource for the Tribe.

32.     The wetlands, drainage systems, and ponds located on the Rancheria property support valuable ecological functions, provide habitat to wildlife, water for cattle, and enable the growth of vegetation that holds cultural importance for the Tribe.  The Tribe is committed to defending its wetlands resources by maintaining wetland health and preventing habitat loss.

**2.     The Tribe's Economic Resources On The Rancheria Property**

33.     Pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq.*, and an amended compact with the state of California, the Tribe operates a Class III Indian gaming facility called Harrah's Northern California ("Casino") on the Tribe's Rancheria property.  The Tribe's Casino encompasses 71,000 square feet of gaming space with twenty table games, about 750 slot machines, a restaurant, a food outlet, and entertainment facilities.  The Tribe's Casino has been in operation since April 2019.

34.     The Tribe's Casino is the primary economic engine for the Tribe.  The revenue from the Casino funds the Tribal government, and provides critical services for Tribal members.  The Casino has approximately 300 employees, the vast majority of whom reside in Amador County.  The Casino also generates a significant amount of state and local tax revenue.

**C.     PCBP'S PROPERTY AND NEW SURFACE MINING OPERATION**

35.     PCBP owns all of the land directly adjacent to the Tribe's Rancheria to the east ("PCBP Property"), as outlined in magenta, yellow and red on the following map:



36.     The Tribe's Rancheria is located to the west of the PCBP Property.  The Tribe's Casino, cultural, and natural resources are visible on the map directly adjacent to the PCBP Property.  Defendants' new clay mining operation is planned to occur on the portion of the PCBP Property outlined in red, which is located only about 1,200 feet east of the Tribe's Rancheria, based on the map's scale.

37.     The PCBP parcel directly adjacent to the Rancheria outlined in magenta is currently zoned AG for agricultural use.

38.     Portions of the PCBP Property adjacent to the Rancheria have been used for mining intermittently since at least 1976.

39.     Amador County and PCBP maintain that the right to conduct the new mining operation qualifies as vested under Section 7.36.050 of the County Code relating to surface mining operations because the area had been mined many decades ago.  The County and PCBP also insist that the new mining operation requires no additional permits from the County. Defendants are in the process of obtaining an amendment to a 1977 Reclamation Plan from the County to facilitate the new mining operation in the area outlined in red on the map.

40.     The 1977 Reclamation Plan upon which Defendants would rely describes the "land use in the surrounding region" as "grazing and water storage."

41.     On or about September 13, 2022, representatives of the Tribe met with representatives of PCBP.  At that meeting, the Tribe learned for the first time that PCBP intended to expand its mining operation on the PCBP Property.  PCBP representatives informed the Tribe's representatives that:

        a.     the new surface clay mining operation would take place on approximately forty acres of land adjacent to the Tribe's Rancheria;

        b.     the new surface clay mining operation would consist of removing the top ten to fifteen feet of the surface across the entirety of the forty acres;

        c.     the new surface clay mining operation could commence as soon as January 2023; and,

        d.     the new surface clay mining operation would last for approximately twelve to fourteen months.

42.     On December 16, 2022, representatives of the Tribe again met with representatives of PCBP.  During that meeting, representatives of PCBP confirmed that it plans to expand its mining operation on the PCBP Property by commencing a new surface clay mining operation on the western portion of the PCBP Property outlined in red in the map depicted

above.  Representatives of PCBP specifically informed the Tribe's representatives that the new surface clay mining operation would take place on approximately 40.1 acres of land adjacent to the Tribe's Rancheria, and that the new surface clay mining operation could commence as soon as the County's approval of the amendment to the 1977 Reclamation Plan.

43.   Also on December 16, 2022, representatives of PCBP indicated that it was entitled to and could, at any time, conduct new mining activities on the PCBP Property outlined in magenta, less than 250 feet from the Rancheria boundary based on the map's scale, and parallel to the location of the Tribe's Casino, cultural, and natural resources.

44.   The only access to the PCBP Property is on the same road that is used to access the Tribe's Rancheria and the Tribe's Casino.  PCBP informed the Amador County Agriculture and Natural Resources Committee in May 2022 that it would use the road shared with the Tribe's Rancheria to haul loads and transport equipment to and from the new mining operation, and confirmed the same during the meeting on December 16, 2022.

**D.   SURFACE CLAY MINING OPERATIONS**

45.   On information and belief, most domestic clay is mined by open-pit methods using various types of equipment, including draglines, power shovels, front-end loaders, backhoes, scraper-loaders, and shale planers.  PCBP informed the Amador County Agriculture and Natural Resources Committee in May 2022 that a "couple" scrapers as well as hauling trucks would be involved in the mining operation.

46.   The industrial equipment used in surface clay mining can include scrapers such as this one, already located in the previously mined area:



47.     Surface clay mining can cause air and noise pollution, and the removal of ten to fifteen feet of the surface of the PCBP Property adjacent to the Tribe's Rancheria will cause ground disturbance and shaking, as well as noise and air pollution.

48.     An open-pit surface clay mining operation can dramatically alter a natural landscape.  Clay deposits are typically mined in huge, open pits, meaning large amounts of surface material must often be removed to another location.  Surface mining can destroy the ecological balance of an area, which results in negative impacts on native species and adjacent landowners.

49.     Surface mining operations can severely erode the soil or reduce its fertility, pollute waters or drain underground water reserves, scar or alter the landscape, and damage roads and structures.  The dust and particles from mining roads, stockpiles, and lands disturbed by mining are a significant source of air pollution.

**E.     ADVERSE IMPACTS FROM DEFENDANTS' NEW SURFACE CLAY MINING OPERATION**

50.     The Tribe's Rancheria is particularly vulnerable to negative impacts for the proposed surface clay mining operation.

51.     The Tribe's Casino sits less than 1,200 feet from Defendants' known proposed surface clay mining area, and approximately 250 feet from an area PCBP claims it is entitled to mine at any time.  Defendants' mining operation will likely create significant noise and vibration that will be felt both outside and inside the Tribe's Casino, and on the land upon which the Tribe's natural and cultural resources are located.  There is a substantial risk that Defendants' new surface clay mining operation will reduce the number of guests coming to the Tribe's Casino.

52.     The new surface clay mining operation will also cause health risks to the Tribe, its members, and the employees and guests of the Tribe's Casino, all of whom will have to avoid the large mining machinery on the road to the Tribe's Rancheria and will be exposed to substantial dust and other fine particulate matters in the air caused by the ten to fifteen feet of surface material that will be removed by the surface mining operation.  This exposure risk will continue for the duration of the proposed surface mining operation commences.

53.     The impacts to air quality caused by the new surface clay mining operation will be particularly concerning since Amador County only very recently attained the 2015 ozone National Ambient Air Quality Standards based on certified ozone air quality monitoring data for the 2018-2020 calendar years.   A notice finalizing a determination by the United States Environmental Protection Agency that the Amador County nonattainment area attained the 2015 ozone standards by the Marginal area attainment date of August 3, 2021, was issued on September 15, 2022.   As of the date of this filing, Defendants have failed to obtain the appropriate permits from the Amador County Air Pollution Control District for the new surface clay mining operation.

54.     The Tribe also believes its groundwater and federally-protected wetlands (as well as other waters of the United States, including Jackson Creek) may be impacted by the new surface clay mining operation.   As of the date of this filing, Defendants have failed to obtain a Section 404 discharge permit for the new surface clay mining operation from the U.S. Army Corps of Engineers. 55.     The likely presence of grave-like structures and other objects of cultural patrimony of the Tribe under the surface of the PCBP property adjacent to the Rancheria could be disturbed or destroyed by mining operations, which would violate, at minimum, various California state laws.

56.     The 46-year old 1977 Reclamation Plan upon which Defendants would rely is woefully out of date and fails to account for the significant changed circumstances of surrounding land used, including federal restoration of the Tribe and the designation of the Rancheria under federal trust status, with which a new open pit mine are simply incompatible. Indeed, it was not until 1983 that the Tribe was restored (six years *after* Defendants' Reclamation Plan was adopted) and not until years later that the Rancheria was taken into trust status, both of which constitute significant intervening events since 1977.

57.     The Tribe has a sovereign interest in protecting its Rancheria, and being able to exclusively possess and use the Tribe's Rancheria.

58.     Defendants' proposed surface clay mining operation will cause immediate harm to the Tribe's Rancheria, which is federal Indian land, which, in turn, will adversely affect the Tribe's ability to self-govern the Rancheria and the Tribe's general economic well-being.

59.     The harm to the Tribe's sovereignty cannot be measured monetarily.

60.     Defendants' actions will cause irreparable harm to the Tribe and the Tribe's Rancheria.

61.     The Tribe has no adequate remedy at law for the harms caused by Defendants' actions, and the impairment of the Tribe's exclusive use and possession of the Tribe's Rancheria.

62.     The balance of hardships in this case strongly favors the Tribe.  Any monetary interests Defendants' may have in the proposed surface clay mining operation  are outweighed by the Tribe's federally-protected rights in its Indian lands.

63.     The public's interest would be served by the entry of an injunction prohibiting Defendants' proposed surface clay mining operation from going forward.

## COUNT I – FEDERAL COMMON LAW NUISANCE

64.     The Tribe incorporates herein and restates the foregoing paragraphs.

65.     The Tribe has a right to use and enjoy its property free from unreasonable interference.

66.     Defendants' new surface clay mining operation adjacent to the Tribe's Casino and the eastern boundary of the Tribe's Rancheria will unlawfully and unreasonably interfere with the Tribe's use and enjoyment of its federal Indian land as well as its economic, natural, and cultural resources.

67.     Defendants' actions constitute a nuisance because the nuisance can be abated by Defendants if they refrain from conducting the new surface clay mining operation adjacent to the Tribe's Casino and the boundary of the Tribe's Rancheria.

68.     The Tribe will suffer direct and irreparable harm as a result of the Defendants' new surface clay mining operation adjacent to the Tribe's Casino and the boundary of the Tribe's Rancheria.

69.     The Tribe seeks to enjoin Defendants from unreasonable interfering with the Tribe's use and enjoyment of the Tribe's Rancheria.

**COUNT II – FEDERAL COMMON LAW TRESPASS**

70.     The Tribe incorporates herein and restates the foregoing paragraphs.

71.     The Tribe has a right to exclusively possess and enjoy its property free from unreasonable interference.

72.     Defendants will directly infringe on the Tribe's right to exclusively possess and use the Tribe's Rancheria property by intentionally causing and/or allowing dirt, debris, water run-off and other materials to enter and physically invade the Tribe's Rancheria.

73.     The Tribe will be harmed by the entrance and physical invasion of dirt, debris, and other materials onto the Tribe's Rancheria.

74.     The Tribe is entitled to an injunction enjoining Defendants from directly infringing upon the Tribe's right to exclusively possess and use the Tribe's Rancheria caused by the new surface clay mining operation adjacent to the Tribe's Casino and the boundary of the Tribe's Rancheria.

**REQUEST FOR RELIEF**

WHEREFORE the Tribe is entitled to and respectfully requests the following relief:

1.     A declaration that Defendants' proposed new surface clay mining activity violates the Tribe's federally-protected right to the use and enjoyment of the Tribe's Rancheria;

2.     A declaration that Defendants' proposed new surface clay mining activity constitutes a trespass and a nuisance under federal common law;

3.     A permanent injunction against Defendants' proposed new surface clay mining activity; and,

4.     Such additional relief as the Court deems just and proper.

1    DATED:  January 27, 2023          Respectfully submitted,

2                                      KILPATRICK TOWNSEND & STOCKTON LLP

3

4                                      By:    /s/ Kendra C. Chapman
                                              KENDRA C. CHAPMAN
5
                                       Attorneys for Plaintiff
6                                      BUENA VISTA RANCHERIA OF ME-WUK INDIANS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    - 14 -